IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-555-D

| | | |
|---|---|---|
| CHARLES A. STALLINGS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

On October 12, 2011, Charles A. Stallings, Sr. ("Stallings" or "plaintiff") filed an application to proceed in forma pauperis [D.E. 1]. On October 25, 2012, the court granted Stallings's application [D.E. 5] and his complaint under 42 U.S.C. § 405(g) seeking review of Michael J. Astrue's ("Commissioner" or "defendant") denial of his applications for supplemental security income and disability insurance benefits ("benefits") was filed [D.E. 6]. On February 27, 2012, Stallings filed a motion for judgment on the pleadings [D.E. 21] and a supporting memorandum [D.E. 22]. On April 20, 2012, the Commissioner filed a motion for judgment on the pleadings [D.E. 24] and a supporting memorandum [D.E. 25]. On May 4, 2012, Stallings filed a response in opposition to the Commissioner's motion [D.E. 27], which was refiled on May 15, 2012, at the direction of the clerk, as a reply in support of his motion for judgment on the pleadings [D.E. 28]. As explained below, the court grants the Commissioner's motion for judgment on the pleadings, denies Stallings's motion for judgment on the pleadings, and affirms the final decision of the Commissioner.

I.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). An ALJ must follow a five-step process to determine whether a claimant is disabled. An ALJ must consider whether a claimant (1) is engaged in substantial gainful employment, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) possesses the residual functional capacity ("RFC") to return to his past relevant work, and (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass, 65 F.3d at 1203.

Stallings applied for benefits on November 25, 2009, and January 22, 2010, alleging that he became disabled on March 1, 2009, due to a brain aneurysm. Tr. 11, 110–14, 126, 130. Stallings later amended his alleged onset date to October 1, 2009. Id. 125. Stallings's applications were denied initially and upon reconsideration, and he timely requested a hearing. Id. 11, 38, 56, 65. On March 2, 2011, an ALJ held a hearing regarding Stallings's applications. Id. 18–37. On April 28, 2011, the ALJ denied Stallings's applications. Id. 8–17. On July 2, 2011, Stallings timely requested review. Id. 6–7. On August 18, 2011, the Appeals Council denied Stallings's request for review. Id. 1–5.

2

The ALJ followed the five-step process in Stallings's case. At step one, the ALJ found that Stallings had not engaged in substantial gainful activity since October 1, 2009. Id. 13. At step two, the ALJ found that Stallings suffered from the severe impairment of subarachnoid hemorrhage, status post-surgical clipping. Id. At step three, the ALJ found that Stallings's impairment did not meet or medically equal a listed impairment. Id. 14. The ALJ next determined that Stallings had the RFC to perform medium work, except that he must avoid concentrated exposure to hazards, heights, ladders, ropes, and scaffolds and perform only simple, repetitive, routine tasks. Id. In light of Stallings's RFC, the ALJ found at step four that Stallings could not perform any past relevant work. Id. 15. At step five, the ALJ found that a significant number of jobs existed in the national economy that Stallings could perform, including the jobs of carton maker, cardboard box maker, and caretaker. Id. 16. Accordingly, the ALJ found that Stallings was not disabled during the relevant period and was thus not entitled to benefits. Id. 17.

In a section 405(g) action, the court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966), abrogated by implication on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). The court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th

3

Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Stallings contends that the ALJ's determination that Stallings had the RFC to perform medium work was not supported by substantial evidence. See Pl.'s Mem. Supp. Mot. J. Pleadings [D.E. 22] 6–9. Specifically, Stallings argues that the ALJ ignored evidence that he suffers from fatigue, impermissibly denied benefits based on Stallings's past drug use, and improperly evaluated Stallings's credibility. See id. The Commissioner responds that substantial evidence supports the ALJ's decision, that the ALJ considered Stallings's complaints of fatigue, that the ALJ did not deny benefits on the basis of Stallings's past drug use, and that the ALJ properly assessed Stallings's credibility. See Def.'s Mem. Supp. Mot. J. Pleadings [D.E. 25] 8–11.

The court agrees with the Commissioner. First, with respect to Stallings's contention that the ALJ ignored evidence of fatigue, the ALJ specifically noted Stallings's complaints related to fatigue in assessing RFC:

> Since suffering a hemorrhage and undergoing the surgical repair in October of 2009, the claimant stated he is unable to walk or stand for very long, that he is very weak, that he does very little around the house, and that he has not driven. The claimant added that he has difficulty with his voice, and that there are some days where he has no voice.

Tr. 14. The ALJ went on to discuss Stallings's medical records:

> Medical records from Duke Hospital do confirm treatment on October 1, 2009 for an acute aneurysmal subarachnoid hemorrhage, as well as hypertensive emergency due to recent cocaine/THC use. Treatment included a right transcondylar and suboccipital craniotomy for clipping of a ruptured posterior inferior cerebellar artery aneurysm. The claimant tolerated the procedure well and was transferred to the Intensive Care Unit (ICU) in stable condition. Postoperatively, the claimant remained neurologically intact. Given his history of substance abuse, however, there was high suspicion for the development of

4

> cerebral vasospasm. As a consequence, the claimant was transferred to the Duke University Medical Center ICU for daily intracranial vasospasm monitoring and possible interventional therapy if necessary. The claimant remained neurologically intact without vasospasm and was discharged on October 15, 2009. Follow-up records in March of 2010 describe the claimant as doing well post-operatively with normal strength, intact sensation, normal reflexes, a normal gait, no problems walking, and no range of motion deficits. The claimant also only took Tylenol for pain. There is no mention of any inability to perform physical activity and no statement from any doctor describing the claimant as disabled (Exhibits 1F, 2F, 6F, and 7F).

Id. 14–15. Stallings notes that upon discharge from the hospital his gait was slow, he dragged his feet, and he swayed from one side to the other. See Pl.'s Mem. Supp. Mot. J. Pleadings 6; see also Tr. 271. However, the October 10, 2009 inpatient physical therapy notes to which Stallings refers the court were pre-discharge, and subsequent notes from October 13–14, 2009, indicate that Stallings was ambulating effectively upon discharge. See Tr. 267–70.

Stallings also notes that despite some post-operative improvement, he continued to have "cognitive haze and lacked stamina," that he was positive for "fatigue, wheezing, weakness and shortness of breath along with his dysphagia" and "malaise and fatigue" in December of 2009, and that a CT scan showed "decreased ventricular caliber with a moderately large degree of multifocal white matter lucency in March of 2010." See Pl.'s Mem. Supp. Mot. J. Pleadings 6–7; see also Tr. 245–46, 333–38, 340–46, 366, 370. The medical records, however, indicate that Stallings had recovered well within a few months of his surgery.

The ALJ cited treatment notes from a neurosurgery return visit to Duke University Medical Center on March 10, 2010, indicating that Stallings was "doing well post-operatively" with normal muscle strength and tone, normal coordination and gait, and some occipital pain. Tr. 364–65. The court also notes that the December 14, 2009 treatment notes of Stallings's otolaryngologist reflecting "fatigue, wheezing, weakness, shortness of breath, and mild dysphagia," appear to refer to his "vocal fatigue." Id. 333, 336. The ALJ discussed these

5

treatment notes, and further noted that subsequent records indicated that Stallings had "some hoarseness but an overall good voice quality with good strength and clarity and no need for further intervention, such as vocal cord medialization." Id. 15. Finally, Stallings cites no physician's notes or other evidence to indicate that the findings of the March 16, 2010 CT scan support his allegations of debilitating weakness and fatigue.

In sum, the ALJ considered Stallings's complaints of weakness and fatigue as a result of his aneurysm, but found that evidence in the record indicated his condition had improved by March 2010. The court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Thus, the court rejects Stallings's first challenge to the Commissioner's final decision.

Next, Stallings contends that the ALJ impermissibly denied benefits based on Stallings's past drug use. See Pl.'s Mem. Supp. Mot. J. Pleadings 7–8. If under the five-step analysis a claimant is found to be disabled and there is medical evidence that the claimant suffers from drug addiction or alcoholism, an additional determination is required—namely, whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). If the drug addiction or alcoholism is found to be material, the claimant cannot be considered disabled under the Act. See 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) (providing that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled").

Here, the record does not reflect that the ALJ denied benefits based on drug use. In assessing Stallings's RFC, the ALJ noted the following with respect to Stallings's past drug use:

> Finally, the undersigned notes that the claimant testified to not using drug [sic] since 2006. However, the claimant tested positive for cocaine and marijuana

6

when he sustained his hemorrhage and admitted to using cocaine a few days prior
to the hemorrhage (See Exhibits 1F, pg. 3 and 7F pg. 10). The undersigned notes
that this inconsistency does not help the claimant's credibility overall regarding
his ability to work.

Tr. 15. That the ALJ considered inconsistencies in Stallings's administrative hearing testimony regarding his prior drug use and his medical records in assessing Stallings's credibility does not establish that the ALJ denied benefits based on Stallings's past drug use. At the administrative hearing, the ALJ did express concern regarding Stallings's candor about his past drug use and discussed the possibility, were he to award benefits, of appointing a representative payee in order to alleviate his concerns. Id. 31, 34–35. However, the Commissioner noted that the ALJ expressing concern about awarding benefits without a representative payee does not equate to denying benefits based on Stallings's past drug use. To the contrary, the ALJ's decision reflects that he denied benefits because he found that the medical records did not support the alleged severity of Stallings's condition and that Stallings had the RFC to perform medium work with limitations. Id. 14–15. Thus, the court rejects Stallings's argument.

Finally, Stallings contends that the ALJ improperly evaluated Stallings's credibility by discrediting his testimony based on his past drug use. See Pl.'s Mem. Supp. Mot. J. Pleadings 8. The ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible and would not preclude medium work as described above." Tr. 15.

In assessing a claimant's credibility, the ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Here, the ALJ first recounted Stallings's testimony regarding the limiting effects of his condition, e.g., his inability to walk or stand for long periods, drive, or do

7

housework, weakness, and voice problems. Next, the ALJ thoroughly discussed Stallings's medical records, which indicated that within six months of surgery Stallings was "doing well post-operatively with normal strength, intact sensation, normal reflexes, a normal gait, no problems walking, and no range of motion deficits." Tr. 15. The ALJ noted that Stallings "only took Tylenol for pain"[1] and that there was "no mention of any inability to perform physical activity and no statement from any doctor describing the claimant as disabled," and that the only physical restrictions placed on Stallings were for the two-week period after his surgery. Id. The ALJ appropriately considered these factors in assessing credibility. See SSR 96-7p, 1996 WL 374186, at *3. Finally, the ALJ indicated that the inconsistency between Stallings's testimony regarding his past drug use and his medical records "does not help the claimant's credibility overall regarding his ability to work." Tr. 15. An ALJ may consider consistency as a "strong indication of the credibility of an individual's statements," and the ALJ appropriately considered it in assessing Stallings's credibility. SSR 96-7p, 1996 WL 374186, at *5.

In sum, the record belies Stallings's contention that the ALJ discredited his testimony on the basis of drug use. The ALJ considered appropriate factors and gave specific reasons for giving less weight to Stallings's testimony and greater weight to the DDS Assessments, which were consistent with the ALJ's finding that Stallings had the RFC to perform medium work with limitations. Tr. 14–15, 41–44, 51–53. Thus, the court rejects Stallings's argument.

II.

The ALJ properly applied the law and substantial evidence supports the ALJ's conclusions. Accordingly, the Commissioner's motion for judgment on the pleadings [D.E. 24]

---

[1] Stallings notes that he was also taking Percocet, as indicated on his Pain Questionnaire dated December 15, 2009. See Pl.'s Mem. Supp. Mot. J. Pleadings 8; Tr. 148. However, records from December 21, 2009, and January and May 2010 do not reflect that Stallings was taking Percocet for pain management. Tr. 156, 170, 346.

8

is GRANTED, Stallings's motion for judgment on the pleadings [D.E. 21] is DENIED, and the Commissioner's final decision is AFFIRMED. The clerk shall close the case.

SO ORDERED. This __7__ day of November 2012.

                                                 JAMES C. DEVER III
                                                 Chief United States District Judge